**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**TAMMY S. CHUTTER,**

      **Plaintiff,**

**v.**                                  **Case No.  8:10-cv-364-T-30TBM**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

     The Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income payments.  Because the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, I recommend that it be affirmed.

I.

     Plaintiff was thirty-nine (39) years of age at the time of her administrative hearing in April 2008.  She stands 5 feet, 7 inches tall and weighed 165 pounds.  Plaintiff has a high school education.  Her past relevant work was as a cook, machine operator, and waitress.  Plaintiff applied for Supplemental Security Income in January 2005, alleging disability as of

August 15, 2003, by reason of nerves, migraine headaches, depression, and stomach problems.[1]  Plaintiff's application was denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge (hereinafter "ALJ").  The Plaintiff was represented at the hearing by counsel and testified in her own behalf.  Additionally, a vocational expert was called by the ALJ.  In essence, Plaintiff testified that she was no longer capable of work because of her nerves and anxiety.

Plaintiff testified that she suffered a nervous breakdown (at an unspecified time in the past) and since has been constantly nervous and anxious.  She also suffers from headaches which she describes as migraines and she has stomach problems as well.  She takes twelve to fifteen medications from which she suffers a variety of side effects such as drowsiness, soreness, dry mouth, and diarrhea.  Plaintiff indicated she could not return to her past work essentially because of her nerves and the inability to be around people.

As for the migraine headaches, she has them two to three times a week.  She has had headaches since she was a child.  Her headaches make her nauseous and when she takes her medication she simply has to go to bed.  The headaches can affect her all day.  When asked how she was able to work with the condition, she indicated that in her past food prep job, she was able to work with the headaches because she had an understanding boss who accommodated her.  As for her anxiety, she suffers problems at least two to three times a

---

[1]At the administrative hearing, she requested to amend the onset date to March 2001 to coincide with her date last insured.

2

week where she is jumpy and does not want to be around people.  She also suffers stomach problems and pain which she attributes to multiple C-sections and a bowel blockage. Additionally, she suffers from a hiatal hernia.  Plaintiff has pain in the abdomen when she attempts to reach.  She describes having pain throughout her body pretty much all the time at a level of seven on a scale of one to ten.

Plaintiff resides with her husband and three children in a single-family home.  She has difficulty sleeping at night and sleeps during the day.  Her husband does most of the household chores and cooking and her kids help out as well.  She indicated she could not lift ten pounds and has problems bending.  She does little during the day.  She receives some outside help with her special needs child, and she helps care for the child as well.  Otherwise, she describes no particular activity during the day, apart from sleeping.  She occasionally watches movies with her family and will do crossword puzzles once a week, otherwise she has no hobbies as such.  She does not like to drive, although she has a driver's license.

In sum, Plaintiff testifies that her conditions effect her focus and attention and her ability to be around people such that she does not believe she can work at any job.  (R. 463-500).

The ALJ next took testimony from Dr. Roy Sumpter, a vocational expert (VE).  After classifying Plaintiff's past work, the VE testified upon a hypothetical assuming an individual of Plaintiff's age, education, and work experience, capable of medium exertional work with certain postural and environmental limitations, and a limitation for low stress work with only occasional contact with the public.  On this hypothetical, the VE opined that such individual

3

could not do Plaintiff's past work but could work as a cafeteria attendant, in housekeeping, and as a mail clerk.  If such an individual could not focus, pay attention, concentrate, or persist in work even at simple, routine repetitive tasks, then no work would be available.  Upon questioning from Plaintiff's counsel, if such individual were limited to only occasional contact with co-workers as well as the public, such an individual could work in housekeeping, but the jobs as a cafeteria attendant or mail clerk would drop out.  (R. 501-06).

Also before the ALJ were medical records outlining the Plaintiff's medical history.  These matters are addressed adequately by the parties' memoranda and are not set out herein in detail.

By his decision of July 15, 2008, the ALJ initially determined that while Plaintiff had worked in 2002 and 2003, she had not engaged in substantial activity since applying for SSI benefits in January 2005.  Further, while Plaintiff has severe impairments related to migraine headaches, depression, post-traumatic stress disorder, bipolar disorder and anxiety, she nonetheless had the residual functional capacity to perform medium exertional work limited to simple routine tasks of non-production work with occasional interaction with the public.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to her in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R.14-23).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See id.* at § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw

5

inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff argues on this appeal that "the ALJ should have determined that [she] was disabled from August 5, 2003, through January 29, 2008." In support, Plaintiff outlines the medical evidence and urges that between August 5, 2003, and January 29, 2008, she was severely impaired by reason of her migraine headaches. She identifies numerous visits wherein Plaintiff complained of and sought treatment for her headaches. While the medical evidence shows some improvement in her condition by January 2008, she contends that she was disabled during this closed period between August 5, 2003, and January 29, 2008. Plaintiff also contends that the ALJ improperly discredited her subjective testimony based on the conclusion that her condition improved in late 2003 and early 2004 and that she did not complain of headaches in 2005 because the medical record suggests otherwise. Further, while

the ALJ's finding that her condition improved, that she was capable of caring for her special needs child, and that she had taken a trip were all true, this was reported after the closed period and when considered in context, such did not undermine her credibility.  (Doc. 16).

In his response, the Commissioner notes that the claim for a closed period of benefits made here was not before the ALJ, and thus never specifically addressed.  Nonetheless, he contends that Plaintiff fails to prove she was disabled due to her headaches and other conditions during any of the period considered by the ALJ.  By the Commissioner's review of the medical records, Plaintiff's headaches improved with treatment.  Thus, records from the Fall of 2003 indicated that Plaintiff's headaches responded to treatment.  Later records in 2004 through 2008 also revealed that when Plaintiff complained of headaches, the condition improved with treatments.  The Commissioner urges that the objective and clinical findings simply do not support disabling headaches.  The Commissioner further argues that the ALJ's handling of Plaintiff's subjective complaints related to her headaches was supported by the record as well.  In numerous instances of treatment,  Plaintiff made no complaints at all of headaches nor did she complain of significant symptoms when headaches were mentioned. The Commissioner also urges that her activities, though not dispositive, were worthy of consideration as well.  In sum, the Commissioner urges that the ALJ's decision was supported by substantial evidence and should be affirmed.  (Doc. 17).

It bears repeating that an applicant for SSI benefits bears the burden of establishing that she is unable to engage in any substantial gainful activity by reason of her medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  Furthermore, the decision on disability is one

7

left for the ALJ and if such is supported by substantial evidence, the court is obliged to affirm it.  Here, while the ALJ credited Plaintiff with severe migraine headaches and mental impairments, he concluded she could nonetheless perform a restricted range of medium exertional work.  This finding, together with the VE's testimony, dictated a finding that Plaintiff was not disabled.  Plaintiff here focuses on her headaches as a basis for a finding of disability.  After a thorough review of the relatively extensive medical record, I am obliged under the applicable standards to conclude that the disability decision of the ALJ is supported by substantial evidence and should be affirmed.

Initially, I note that Plaintiff undoubtedly suffers from impairments and circumstances which make her life relatively difficult.  Also, it is clear from the medical evidence that among those impairments are headaches and migraine headaches.  By Plaintiff's account, which is not contradicted, she has suffered from headaches since she was eight years old.  While she worked for years with the condition, she now claims her condition rendered her wholly disabled as of August 5, 2003.  However, as the ALJ viewed the evidence, there was nothing in the medical record to support that the headaches rendered her disabled either in 2003 or 2001, on her amended onset date.  By my review of the medical evidence, disability is not indicated by any records from that period.  Thus, while records from 2003 reveal Plaintiff was diagnosed by Dr. Ray as suffering from migraines (R. 176) and she was admitted to a hospital for the condition in August 2003, based on complaints to Dr. Potes of intractable headache (R118-19), a month later she was reporting improvement in both the frequency and severity of her headaches.  (R. 113).  Significantly, as the ALJ further noted, even at that time she was hospitalized, her physical examination was within normal limits and she revealed no

8

neurological deficits.  (R. 119).  Indeed, Dr. Potes's notes reflect that throughout this period of

Plaintiff's care, her neurologic exams remained normal (R. 112-22).  A carotid Doppler study

(R. 111) and an EEG study (R.115) were normal and left wholly unexplained the Plaintiff's

subjective claims.  This record simply does not support that Plaintiff was disabled from all

work beginning as of August 5, 2003.  As for the later period, while the ALJ could have

addressed the medical evidence with greater detail, the decision generally reflects his

consideration of the whole of that record and provides adequate support for the conclusion

that Plaintiff's headaches were not disabling from all work.[2]

By my review of the medical evidence, later notes from Dr. Ray in 2004 support her

continued treatment by medications for complaints of headaches, but do not suggest any

worsening of the headaches or that her condition prevented all work.[3]  From February 2005

into July 2005, Plaintiff treated for a number of complaints with a physician's assistant.  (R.

235-43).  While she was assessed to suffer common migraines along with other conditions,

Plaintiff's reports were relatively benign and clinical findings did not suggest a disabling

---

[2]Plaintiff received a good deal of medical attention for her various complaints. Although not addressed in any detail by the ALJ, beginning in 2003 and extending into 2004, Plaintiff underwent a wide array of objective testing for various conditions.  Such testing produced either negative or normal results in almost every instance.  *See* (R. 130, 131, 133 - 37, 140 - 44, 147- 51).  A MRI of the head revealed an area of hyperintensity within the deep white matter adjacent to the right frontal horn which "likely represents chronic ischemic change but may also be seen in the setting of chronic migraine headaches."  (R. 145).

[3]This treating doctor did not make any finding of disability.  In a note from July 2004 she indicated that Plaintiff requested a note excusing her from classes teaching her how to get a job because the classes made her stressed.  The note was provided not based on a disabling condition, but because ". . . she is the main care giver for her CP daughter.  She is not likely to be employable[;] is applying for disability."  (R. 168-69).

condition.[4]  When headaches were discussed, these records suggest that the medication she was given helped with her symptoms.  *See* (R. 241).  As the ALJ concluded, these records also suggested that Plaintiff was doing well when she left the care of this provider.  (R. 235).  Thereafter, Plaintiff received much of her care from Park Ridge Medical Associates.  These records, which span the period from later in 2005 into 2008, do reflect complaints of and care for headaches along with a number of other conditions.  (R. 307-40; 363-460).  Nothing in late 2005 nor in 2006 is particularly noteworthy.  However, as the ALJ noted, in May 2007, Plaintiff was complaining of daily headaches.  Medications and physical therapy were ordered.  While Plaintiff disputes this, follow-up notes reflect improvement.  By October 2007,  her condition was "much better" and appeared well-managed by medication and physical therapy.  (R. 314).  In November 2007, she reported that her headaches, appetite and sleeping were better.  (R. 451).  By January 2008, she was reporting her migraines were better and "very infrequent."  *See* (R. 460).  Similarly, as also noted by the ALJ, related physical therapy records reflected improvement.  *See* (R. 302-06).

While Plaintiff concedes improvement after January 2008, she urges that this evidence supports that her headaches left her wholly disabled during the closed-period.  By my consideration, I am obliged to conclude from this record that the ALJ's contrary assessment is consistent with the record as a whole and thus supported by substantial evidence.  When Plaintiff complained to her doctors of headaches and she underwent

---

[4]During this period, Plaintiff also underwent mental health evaluations.  While both evaluations noted complaints of migraine headaches and found evidence of depression and anxiety, neither concluded that Plaintiff could not work.  *See* (R. 189-93; 194-95).

treatment, the records indicate she responded well and the severity and frequency of the condition improved.  No doctor who treated the condition ever suggested disability by reason of her headaches.  As the decision reveals, the ALJ took the condition into consideration in fashioning the Plaintiff's residual functional capacity (RFC) for simple, less stressful work with only occasional interaction with the public. On this appeal, this RFC is not challenged nor does Plaintiff demonstrate that the ALJ failed to include any limitations which should have been included by reason of her headaches.  I cannot agree that the medical record reveals a closed period of disability as claimed.

To the extent that the Plaintiff also finds fault with the ALJ's reliance on certain non-medical circumstances to discount Plaintiff's subjective claims, I note first that the primary reason the ALJ declined to fully credit Plaintiff was the lack of medical support.  As for the ALJ's mention of a report indicating that Plaintiff cared for her daughter who suffers from cerebral palsy, I find no error in this.  Such circumstance, as regrettable as it is, is not inappropriate for consideration.  The fact that the report was made after the date of her alleged closed period of disability, is not significant when it is remembered that the claim before the ALJ was not for a closed period as here requested.  Similarly, a report by Plaintiff that she had enjoyed a vacation was not wholly inappropriate for consideration either in light of Plaintiff's claims as to the severity and frequency of her headaches.

Because I find the whole of the evidence to have been adequately considered by the ALJ and the severity and frequency of her headaches adequately assessed in light of that evidence, I conclude Plaintiff is not entitled to relief on this claim.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence, and I recommend that it be affirmed.  I further recommend that the Clerk be directed to enter Judgment in favor of the Defendant and to close the file.

Respectfully submitted this
5th day of November 2010.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies furnished to:
The Honorable James S. Moody, Jr., United States District Judge
Counsel of Record